**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **BERNELL JACKSON QUILLENS** | § | |
| | § | |
| **V.** | § | **A-20-CV-633-RP** |
| | § | |
| **BOBBY LUMPKIN** | § | |

## ORDER

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Documents 1, 2 and 6) and Memorandum in Support (Document 4) and Respondent's Answer (Document 9).  Petitioner, represented by counsel, paid the full filing fee for this case. For the reasons set forth below, the Court denies Petitioner's application for writ of habeas corpus.

## STATEMENT OF THE CASE

**A.      Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 428th Judicial District Court of Hays County, Texas, in cause number CR-16-0870.  Petitioner was charged by indictment with three counts of compelling prostitution and three counts of trafficking a child-compelling prostitution.  He entered pleas of not guilty and was tried by a jury.  Petitioner was found guilty of each count and sentenced by the jury to concurrent forty-year sentences on September 28, 2017.

Petitioner's conviction was affirmed by the First Court of Appeals of Texas on October 2, 2018. *Quillens v. State*, No. 01-18-00056-CR, 2018 WL 4701580 (Tex. App. – Houston [1st] 2018, no pet.).  Petitioner did not file a petition for discretionary review.

Petitioner challenged his conviction in a state application for habeas corpus relief. The Texas Court of Criminal Appeals denied the application without written order on February 19, 2020. *Ex parte Quillens*, No. 90,620-01.

### B.    Factual Background

The factual background of this case is found in the Court of Appeals opinion and is repeated below.

On October 15, 2015, the Kyle Police Department referred a case involving allegations of trafficking of S.S, a sixteen-year old female, to the Human Trafficking Unit of the Office of the Attorney General for investigation.[FN3] Based on the information received, Sergeant John Elizarde, an investigator with the Human Trafficking Unit, subpoenaed records for appellant's phone number, 504-615-4265, from Backpage.com, a website that traffickers use to advertise women for hire. In response to the subpoena, Backpage provided records linked to appellant's phone number which included advertisements containing photographs of S.S. in various states of undress. The records showed that the advertisements of S.S. had been purchased using appellant's email address, tharealtrillreal@gmail.com. The investigation also linked appellant's phone number and email address to his Facebook account.

> [FN3]  R.B., S.S.'s mother, testified that S.S. was born on November 26, 1998, and was sixteen years old in June and July 2015.

On the night of June 30, 2015, Roque Leal was looking at advertisements on Backpage.com to find someone to hire for sex. Leal testified that, after consuming ten beers, he called a phone number that he found on a Backpage ad. Sometime after the call, a woman arrived at his house. When he opened the front door, she was standing there and a car was at the end of his driveway. Leal described the woman as approximately his height with black hair. After the woman came into Leal's house, Leal offered her something to drink, paid her $200 for sex, and had vaginal intercourse with her. Leal testified that the woman then left and he "heard them drive off."

Leal testified that his phone number at the time was 956-203-5338. Screen captures of the Backpage ads of S.S. during the time period in question show that the contact phone number listed on the ads was 504-615-4265, appellant's phone number. Appellant's and Leal's phone records, which were admitted at trial, showed that Leal placed his first call to 504-615-4265, appellant's phone number, at 12:06 a.m. CST,

2

on July 1, 2015. The records also show several more calls between appellant and Leal in the early morning hours of July 1. Leal testified that these calls with appellant's number occurred at approximately the same time that he recalled contacting the phone number on the Backpage ad, he had never previously contacted 504-615-4265, and the only way that he would have obtained the phone number was from a Backpage ad.

Cameron White, appellant's driver, testified that he drove S.S. and appellant to a house matching the description of Leal's house for an "out-call."[FN4] White and appellant dropped S.S. off at the house and later returned after she texted that she was ready to be picked up. When S.S. got in the car, White saw her give appellant the money she had received. White testified that the encounter in question occurred at night. Afterwards, White drove appellant and S.S. to a Sheraton hotel in Austin. S.S. stayed for a portion of the night at the hotel and then White and appellant took her home. White testified that he and appellant picked S.S up in the morning and the three of them went to the Wal-Mart in South Austin. As they were walking out of the store, a loss prevention employee stopped S.S. for shoplifting. A photo of S.S. and appellant taken from Wal-Mart's surveillance video dated July 1, 2015, was admitted at trial.

> [FN4] Elizarde testified that an "out-call" occurs when a woman or child engaged in prostitution goes to the sex buyer's location for sex, as opposed to an "in-call" when the sex buyer goes to the location of the woman or child.

At the conclusion of the guilt-innocence phase of the trial, the jury found appellant guilty of three counts of trafficking a child–compelling prostitution and three counts of compelling prostitution. During the punishment hearing, Sergeant Dana Bowlin with the Human Trafficking Unit testified that subpoenaed records revealed that appellant had posted advertisements for prostitution on Backpage.com in eight states from September 2013 through August 2015. At the conclusion of the hearing, the jury assessed appellant's punishment at forty years' confinement on each count, and the trial court ordered the sentences to run concurrently.

*Quillens*, 2018 WL 4701580, at *1-2.

**C.**     **Petitioner's Grounds for Relief**

Petitioner argues appellate counsel was ineffective for failing to request that the hearing on Petitioner's motion to dismiss based on violation of the right to speedy trial be included in the reporter's record and failed to challenge the trial court's denial of Petitioner's motion to dismiss on appeal.

**D.**     **Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies.  A review of the state court records submitted by Respondent shows that Petitioner has properly raised his claims in previous state court proceedings.

## DISCUSSION AND ANALYSIS

**A.**     **The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act.  *See Harrington v. Richter*, 562 U.S. 86, 97–100 (2011).  The Court noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington*, 562 U.S. at 98.

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.*  Following all of the Courts of Appeals' decisions on this question, *Harrington* concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning."  *Id.* (citations omitted).  The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)."  *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)).  When there is no explanation with a state court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief."  *Id.*  And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

As *Harrington* noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court.  *Id.* at 100 (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the

relevant state-court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

*Id.* at 740-41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. *Id.*

## B.      Ineffective Assistance of Appellate Counsel

The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. AMEND. 6. Sixth Amendment claims concerning allegedly ineffective assistance of appellate and trial counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his

defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland*, 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland's* standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S at 101. As a result, the question is not whether

counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 105.

A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). As noted above, the *Strickland* standard for proving ineffective assistance of counsel applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). Thus, to obtain relief on his claim, Petitioner must demonstrate that (1) appellate counsel's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of Petitioner's appeal would have been different. *See Smith*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2015).

When presented with this issue on habeas corpus review the Texas Court of Criminal Appeals denied Petitioner's application without written order.  Petitioner has the AEDPA burden of showing that the state court could not have reasonably ruled against him.  Petitioner has not met this burden.

The Sixth Amendment guarantees criminal defendants "the right to a speedy and public trial." U.S. CONST. amend. VI. Because that right is "amorphous," "imprecis[e]," "necessarily relative," and "slippery," the Supreme Court established "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Barker v. Wingo*, 407 U.S. 514, 522, 529–30 (1972). Relevant factors include the length of the delay, the reason for it, the defendant's diligence in

asserting the right, and whether the delay prejudiced the defendant. *Vermont v. Brillon*, 556 U.S. 81, 90 (2009).

The right to speedy trial was raised and litigated in state court.  The parties thoroughly briefed the issue, and the state trial court held a hearing prior to trial at which the attorneys admittedly more or less read from their pleadings.  Counsel for Petitioner first summarized pertinent dates for the court.  Counsel indicated that Petitioner was arrested in California on June 30, 2016, was booked into the Hays County Law Enforcement Center on July 14, 2016, and applied for court-appointed counsel on July 18, 2016. Attorney Lynn Peach filed a letter of representation on July 25, 2016, and Petitioner was indicted on September 14, 2016.  On October 14, 2016, Ms. Peach filed a motion to withdraw due to a potential conflict of interest.  The court granted the motion to withdraw and appointed substitute counsel, Eric Rosen.  Petitioner subsequently retained Kelly Higgins as counsel, and on December 1, 2016, Higgins was substituted as counsel in place of Mr. Rosen.  Petitioner was arraigned on December 6, 2016.  That same day counsel for Petitioner filed a motion requesting a speedy trial.  Mr. Higgins moved to withdraw as counsel on February 1, 2017, due to Petitioner's failure to pay legal fees, before receiving a ruling on his motion.  Petitioner applied for court appointed counsel.  On February 22, 2017, Michael Shulman was appointed and replaced Mr. Higgins as counsel.  On May 16, 2017, Mr. Shulman filed a motion for speedy trial. The trial court granted the motion and set the case for a jury trial on June 19, 2017.  Counsel asserts he was unable to contact Petitioner to prepare for trial, because Petitioner had been transferred to an undisclosed medical facility for treatment.  At a pretrial hearing held on June 13, 2017, counsel advised the trial court of the problem. The Hays County District Attorney's Office intervened and an agreement was reached with the Sheriff's Office allowing counsel to visit Petitioner under confidentiality and

security rules.  Counsel asserted at the June 13, 2017 pretrial hearing, that the State requested trial to be reset to September due to a witness availability problem.  The trial court reset the trial to September 25, 2017, with no objection from the defense.

At the hearing on the motion to dismiss, counsel argued the *Barker* factors weighed in Petitioner's favor. The State, on the other hand, argued the *Barker* factors weighed more heavily in favor of the State.  Petitioner faults appellate counsel for not having the hearing on the motion to dismiss transcribed. However, all of the arguments made at the hearing were fully briefed in Petitioner's Motion to Dismiss and the State's response.  Appellate counsel clearly had the ability to assess the viability of a claim regarding a violation of the right to a speedy trial without a transcript of the hearing.

Neither party disputes that Petitioner made a threshold showing that the delay—measured from the date of arrest or indictment, whichever was first, *Amos*, 646 F.3d at 206—is "presumptively prejudicial." *Barker*, 407 U.S. at 530. A delay approaching one year satisfies that benchmark. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).  The delay in Petitioner's case was 15 months.

The length of the delay is also a factor in the balancing test. *United States v. Molina-Solorio*, 577 F.3d 300, 305 (5th Cir. 2009) ("The longer the delay[,] ... the heavier this factor weighs in a defendant's favor...."). A 15-month delay weighs in favor of a speedy trial violation but not heavily so. *Amos*, 646 F.3d at 206–07 (noting a delay of 30 months strongly favors the accused).

There appear to have been multiple reasons for the delay in this case.  After the first court appointed counsel withdrew due to a potential conflict, Petitioner replaced the second court appointed counsel with retained counsel.  However, due to Petitioner's failure to pay retained

counsel, new counsel had to be appointed.  As explained by Respondent, the case was complex in that it involved six first degree felony counts and there were over 6,500 pages of discovery, not including voluminous electronic discovery.  New counsel did not receive the discovery until March 2017.  After the June 2017 trial setting, counsel filed a motion requesting an investigator, because of the volume of discovery. Finally, the State pointed out the factor beyond everyone's control was the fact that Petitioner got cancer, a malignant growth on his foot, and Petitioner was still in the hospital at the pretrial setting in June 2017.  In total the reasons for the delay weigh in favor of the State.  There is no evidence that the State engaged in a deliberate attempt to delay trial in order to hamper the defense or to gain a tactical advantage.

The third factor—his timeliness in asserting the right—also weighs in favor of finding no violation.  On December 6, 2016, a little less than three months after his indictment Petitioner invoked his right to a speedy trial.  However, no ruling to this motion was obtained, because Petitioner failed to pay retained counsel and counsel withdrew.  Six months later, on May 16, 2017, new court appointed counsel moved for a speedy trial.  The trial court granted the request and set the trial for June 19, 2017.  The trial was subsequently reset to September 2017 due to the unavailability of a State's witness.  Petitioner did not object to the trial being reset to September.  Instead, in July 2017, he moved for dismissal based on a violation of his right to a speedy trial.

As for the final factor, Petitioner has not shown that he suffered prejudice from the delay. *See also United States v. Bishop*, 629 F.3d 462, 465 (5th Cir. 2010) (recognizing that a defendant must show "actual prejudice" when the first three factors do not strongly weigh in favor of a constitutional violation); *see also Goodrum v. Quarterman*, 547 F.3d 249, 260 (5th Cir. 2008) (declining to presume prejudice when two of the first three factors strongly favored the defendant).  Prejudice may

11

mean "oppressive" pretrial detention, "anxiety" arising from delay, or an "impaired" defense. *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*  As explained by Respondent, there is nothing oppressive about a fifteen-month delay for a complex case involving six first degree felonies.  Though Petitioner's anxiety and concern might have been lessened by a shorter delay, the delay was not attributable to the State.  Further, Petitioner has not shown his defense was impaired by the delay.

Because Petitioner's right to speedy trial was not violated, counsel was not deficient for failing to raise the issue on appeal.  Moreover,  there is no reasonable probability that, but for appellate counsel's alleged deficient performance, the outcome of Petitioner's appeal would have been different.

<u>CONCLUSION</u>

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of appellate counsel.

<u>CERTIFICATE OF APPEALABILITY</u>

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c) (1)(A).  A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  The Supreme Court fully

explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Court denies Petitioner a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Application for Habeas Corpus Relief is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

**SIGNED** on November 18, 2020.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE